McFarland, J.,
delivered the opinion of the court:
The complainants in the original bill are the children of Nathaniel Leavitt Lawrence, now deceased. The complainants in one of the cross bills are the children of Elizabeth Lawrence, now the wife of S. E. Singleton. They claim that they own remainder interests in the real estate in controversy by virtue of a deed executed by their grandfather, John B. Lawrence, on the 27th of September, 1837. The construction of this deed is the question to be determined. The deed conveys the property to- the three children of the grantor, Nathaniel Leavitt Lawrence, Elizabeth Lawrence, and Claudius Cicero Lawrence, their heirs and assigns forever, vesting, by the terms of the first part of the deed, undoubtedly, a fee simple title, but the following clauses are added: “But it is nevertheless understood, and hereby expressly named, that the said John B. Lawrence reserves to himself, natural guardian, the sole and exclusive right and privilege of renting or leasing for a. term of years the said ¡premises above described, *171 and oí receiving the rents and profits thereof, to be used and applied by him at his discretion for the support, maintenance, and education of said children during the natural life of the said John B. Lawrence. And it is further hereby expressly stipulated, covenanted, and agreed that the said property hereby conveyed is not to be subject to the control or disposition of any one, of all, or either of the grantees above named, nor shall they, or either of them, have or possess the power or authority to convey, sell, mortgage, deed, convey, or otherwise dispose of the same, but it is to be held for the sole and exclusive use and benefit of them, the said grantees, during their lives, and of the legal heirs of their bodies, and their own proper descendants forever; nor shall the said property be bound or in any manner subject to any debt or debts, contract or contracts, of the said grantees, or either of them, in any manner or form whatever.” John B. Lawrence, the grantor, died about the year 1843. Claudius Cicero Lawrence, one of the grantees, died in the year 1845, unmarried, intestate, and without issue. Nathaniel Leavitt Lawrence, another one of the grantees, by deed, in 1851, conveyed his interest in the property to S. F. Singleton, the present husband of Elizabeth, the other grantee, and died in 1867. The present holders of the property claim under deeds from S, E. Singleton and wife. The complainants claim that, by a proper construction of the deed referred to, the three children of the grantor took only life estates in the property, and that they (the grandchildren) were vested, by operation of the deed, with remainder interests as purchasers.
As we have seen, by the general terms of the conveying part of the deed, the first takers were vested with an absolute fee simple title. The question is as to the effect of the subsequent restricting clauses. The words, “it [the property] is to be held for the sole and exclusive use and benefit of them, the said grantees, during their lives, and *172 of the legal heirs of their bodies, and their own proper descendants forever,” are, in connection with other language hereafter to be discussed, supposed to limit the estate of the first takers to a life estate. We are of opinion, however, that, taking this language without reference to other portions of the deed, it must be held, either by operation of the rule in Shelley’s case, or by operation of the statute upon estates tail, to vest the first takers with the absolute fee. It, in fact, falls directly within the rule as laid down in the leading case, Polk v. Paris, 9 Yer., 210, and other cases. But this conclusion is resisted upon several grounds:
1. That the estate of the first takers was an equitable, and not a legal, estate. There are several cases holding that in such cases the rule does not operate. It is argued that the legal estate Avas reserved to the grantor during life, by implication, and the estate of the grantees was therefore only equitable. This is predicated upon the clause of the deed which reserves to the grantor the right, as natural guardian, to rent or lease for a term of years, and receive the rents, and apply the same, in his discretion, to the support, maintenance, and education of the grantees during the life of the grantor, and the clause which denies to the grantees the right to control or dispose of the property, or to sell or convey it. It is maintained that, to enable the grantor to exercise the right reserved to him, he must have had the legal title; and there are authorities holding that in such cases the legal title will, by implication, be held to vest accordingly. But, -be this as it may, and we do not concede that this case is governed by this rule, it is clear, we think, that the title of the children, the first takers, AAas a legal title from and after the death of the grantor; for it will be observed that the right of control reserved was during the life of the grantor, and not the life of the grantees. This title, by implication, to support the trust, Avould end when the purposes of the *173 trust were accomplished, at the death of the grantor; so the grandchildren would take the legal title directly from their ancestors, precisely as ky descent, and thus come strictly within the reason of the rule.
2. It is again argued that the addition of the words, “and their own proper descendants forever,” after the words, “legal heirs of their bodies,” takes the case out of the rule, and makes the estate of the first takers only for life, as it engrafts thereon a new inheritance in favor of the descendants. These words, we think, however, 'could have no other effect than to indicate the line of descent in which the property was to go — that is, to the descendants as heirs. We do not think that these words were intended for any other purpose. It is true that there are some provisions and apparent stipulations of this deed which are defeated by this construction — that is, that the grantees are to have no power of disposition or right to sell or convey the property. These provisions may well be looked to in order to determine whether the grantor intended to vest in the 'grantees an absolute legal title, or only the right in equity to receive the rents and profits during their lives. If the latter be the proper construction, then, of course, they could not sell and convey the property. But the whole deed must be looked to, and, if it be, by a fair construction, an absolute conveyance of a legal title, with a mere restriction upon the power of disposition, the latter provision must fail, as both cannot stand. We have seen that, in our opinion, an absolute title was vested. The restriction upon the power of disposition may be construed to restrict the power of sale or disposition during the life of the grantor. This was most probably the purpose, as is evident when we look to the purpose of the entire deed; but if this be not so, then, the purpose evinced would seem to be to prevent any alienation either by the first takers or their heirs and descendants forever; the language, in substance, being that the property is not to be subject *174 to control of either of the grantees, or should they, or either of them have power to sell or convey, or otherwise dispose of the same, but to be held for the sole and exclusive use of them (the grantees) .during their lives, and of the legal heirs of their bodies and their descendants forever. Such a purpose would be contrary to the spirit and policy of our law, and cannot prevail, and at the same time carry out the purpose to vest a fee simple title.
It was not our purpose to enter into any general discussion of a question upon which so much has been written. The chancellor’s decree dismissing the bills, will be affirmed, with costs. We do not understand the case of Mrs. Singleton as before us. It appears that her privy examination as to some of the deeds is defective. Whether she will have any right to relief during the life of her husband we do not determine, as we do not understand that she has appealed from the decree.